**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL CASE NO. 16-CV-43-JMH**

**UNITED STATES OF AMERICA**                                                                       **PLAINTIFF**

**V.**                        **UNITED STATES'S OPPOSITION TO CLAIMANTS'
                        MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**12 PARCELS OF REAL PROPERTY WITH
ALL IMPROVEMENTS AND APPURTANCES
THEREON, IN NAMES OF EARL PLANCK, SUZANNA
PLANCK, AND/OR B S LAND AND CATTLE, LOCATED
IN NICHOLAS COUNTY, KENTUCKY, ET.AL.,**                        **DEFENDANTS**

\*   \*   \*   \*   \*

The United States, by its counsel, submits this Opposition to Claimants Earl and

Suzanna Planck's Motion to Dismiss.    For the reasons set forth herein, the motion (DE

26) should be denied.

When a claimant files a motion to dismiss a civil forfeiture complaint under Rule

G(8)(b) of the Federal Rules of Civil Procedure Admiralty and Maritime Claims

Supplemental Rules, the Court must apply the standard set forth in Supplemental Rule

G(2)(f).    *See* Rule 8(b)(ii).[1]    Rule G(2)(f) provides that the complaint must "state

sufficiently detailed facts to support a reasonable belief that the government will be able

---

[1] The pleading standard set forth by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), cases cited by the Claimants in their motion, does not apply in civil forfeiture cases.   *United States v. 263,327.95*, 936 F. Supp. 2d 468 (D.N.J. 2013).

to meet its burden of proof at trial."   This standard mirrors the civil forfeiture procedures statute, 18 U.S.C. § 983(a)(3)(D), in that the adequacy of the complaint is measured against the pleading requirements of subdivision (2), not against the quality of the evidence available to the United States when the complaint was filed.   *See* Advisory Committee Note to Rule G(8)(b) (2006).

The complaint need not set forth all of the facts known to the United States, nor is it necessary to allege specific transactions, identify all of the witnesses or otherwise preview the United States's case.   *See United States v. Funds in the Amount of $45,050.00*, No. 06-C-2948, 2007 WL 2323307, *5 (N.D. Ill. Aug. 9, 2007) (Rule G(2)(f) does not require allegation tying seized currency to a specific drug transaction); *United States v. 5443 Suffield Terrace*, 209 F. Supp. 2d 919, 923 (N.D. Ill. 2002) (forfeiture complaint does not have to detail specific transactions supporting Government's theory of forfeiture); *United States v. Approximately $25,829,681.80 in Funds*, No. 98 Civ. 2682, 1999 WL 1080370, *6 (S.D.N.Y. Nov. 30, 1999) (complaint that alleges underlying fraud scheme and money laundering transaction is sufficiently particular; actual fraudulent statements need not be alleged); *United States v. Contents of Nationwide Life Ins. Annuity . . . in the Name of Warshak*, No. 1:05–CV–00196, 2008 WL 1733130, *3 (S.D. Ohio April 10, 2008) (rejecting claimant's argument that CAFRA heightened the pleading requirement; to the contrary, section 983(a)(3)(D) makes it clear that the complaint need not detail the tracing of the property to the underlying crime).

What the complaint[2] must do, however, is allege reasonably detailed facts, connect the defendant property to the offense giving rise to the forfeiture, and provide a good faith reason to believe that the United States, after the completion of the discovery process, will be able to meet its burden of proof.   *See United States v. $829,422.42 in U.S. Currency*, No. 3:08CV00914, 2009 WL 1743753 (D. Conn. June 18, 2009) (complaint alleging a money laundering offense was sufficient to satisfy the reasonable belief standard in Rule G(2)(f) and G(8)(b); the complaint does not have to present evidence sufficient to establish the forfeitability of the property); *United States v. $335,260.00 in U.S. Currency*, No. 1:09-CV-2929, 2010 WL 1416919, *2 (N.D. Ohio Apr. 6, 2010).   And the United States does not have to establish probable cause at the time it files its complaint—to survive a motion to dismiss, it need only satisfy the "reasonable belief" standard of Rule G(2)(f).   *United States v. $16,757.00 in U.S. Currency*, No. 1:10CV1450, 2010 WL 5662092, *3 (N.D. Ohio Dec. 22, 2010). Contrary to the Claimants' assertion, the United States has met this burden.

Even though probable cause is not required for the filing of the civil complaint, the United States has already established probable cause as it relates to the defendant bank accounts and checks.   This Court, through a United States Magistrate Judge, issued

---

2 For the purposes of Rule G(2)(f), the "complaint" includes the incorporated affidavit of a law enforcement officer.   *See United States v. $448,163.10 in U.S. Currency*, No. 3:06CV555, 2007 WL 4178508 (D. Conn. Nov. 20, 2007) (in determining the sufficiency of the complaint under the Supplemental Rules, the court may take into account information contained in an affidavit filed along with the complaint); *United States v. 2121 Kirby Drive*, No. H-06-3335, 2007 WL 3378353 (S.D. Tex. Nov. 13, 2007) (in determining the sufficiency of a complaint, the court will look not only to the complaint itself, but to any affidavit or other attachment to it).

3

seizure warrants as to this property.   The United States properly obtained the seizure warrants, and the Claimants have not challenged their validity.   Although the Claimants conflate the "probable cause" and "reasonable belief" requirements, the two are legally distinguishable.   Probable cause is a higher standard than the reasonable belief required for filing a civil forfeiture complaint.   *See United States v. Contents of Accounts*, No. 3:10–CV–228, 2010 WL 2556849, *3 n.8 (W.D. Ky. June 18, 2010) ("a probable cause finding more than meets the reasonable belief standard required to maintain the complaint").   Since the United States has already cleared that higher burden, the motion to dismiss the complaint against the accounts and checks must necessarily be denied.

Only the defendant real property has not been seized[3] (because seizure warrants are not sought against real property)—meaning the United States must allege sufficient facts to support a reasonable belief that the property will be forfeitable at trial.

The information set forth in Special Agent Mary Trotman's affidavit is more than sufficient to support a reasonable belief that the United States will be able to establish at the trial that all of the defendant property is forfeitable.   The United States filed a civil forfeiture complaint in this matter on February 5, 2016.   [DE 1.]   The complaint was amended twice to add additional property as the criminal investigation unfolded.   [DE

---

3 Although Claimants reference "the 1,300 acres seized by the Government" (DE 26-1 at 17), it should be noted that the real property has not been seized.   Pursuant to 18 U.S.C. § 985, defendant real property is not seized until there is an order of forfeiture, and "the owners or occupants of the real property shall not be evicted from, or otherwise deprived of the use and enjoyment of, real property that is the subject of a pending forfeiture action."   18 U.S.C. § 985(b)(1)(B).

4

11, 21.]    The complaint seeks forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and

981(a)(1)(C), alleging that the defendant property was either involved in a money

laundering violation or traceable or derived from proceeds of specified unlawful activity.

[DE 21-2: Affidavit at ¶ 4.]    Section 981(a)(1)(C) authorizes the forfeiture of the

proceeds of more than 200 different state and federal crimes.    *United States v. All Funds*

*Distributed to Weiss*, 345 F.3d 49, 56 n.8 (2nd Cir. 2003).    Section 981(a)(1)(A) permits

the forfeiture of all property involved in a money laundering offense—not just the

proceeds being laundered.

The affidavit – beginning at paragraph 34 – sets forth with specificity how the

defendant property is connected to offenses that give rise to forfeiture: 1) that the

investigative information was gathered from numerous sources (e.g., validly obtained

search warrants, witness interviews, property records, and complaints[4] submitted to RMA

between 2009 and 2013); 2) strong indicia of fraudulent behavior stemming from

Claimants lengthy history of claiming large losses through insurance claims (¶ 34-35); 3)

reporting harvests that are only a fraction of the pounds per acre compared to county

averages (¶ 36-39); 4) claiming crops were being grown on land that is heavily wooded

and not suitable for crops (¶ 42- 46); 5) evidence of insurance adjusters who were

complicit in filing false claims associated with this land (¶ 44); 6) tobacco sales contracts

---

        4 Although Claimants take issue with the categorization of these complaints as
"anonymous," there is nothing improper with law enforcement proceeding in their investigation
through anonymous tips and complaints.

filed with RMA and records from PMI showing that despite low acreage yield Claimants were consistently nearly fulfilling their contractual amounts of tobacco (¶ 47-52); 7) discrepancies between Claimant Suzanna Planck's multi-year contracts to sell tobacco to PMI and the FSA records only showing her insuring tobacco in the early 2000s (¶ 52-53); 8) admissions by the Claimants' daughter and son-in-law and evidence that they were claiming to farm tobacco when they clearly were not (¶ 54-63)(their statements to USDA and receipt of food stamp benefits is a further indication of fraudulent behavior) (¶ 58); 9) a detailed pattern of financial transactions involving Jessie Smith that indicate use of his bank account as a pass-through account for Claimants to launder money illegally obtained through the filing of false claims, as well as insurance loss claims filed by Smith on farms on which Claimants and others also filed claims in different years (¶ 64-70); and 10) ARMtech records indicating insurance indemnity payments based upon false information and duplicate photos utilized by Claimants' adjuster and agent (¶ 71-73).

The complaint also alleges sufficient facts to reasonably believe that the defendant real property was involved in or facilitated money laundering.   It specifies two ways in which the property was involved: 1) it is traceable to illegal proceeds, and 2) the property facilitated the underlying fraud which generated the laundered proceeds.   Both are supported factually and by legal precedent.

Investigators analyzed voluminous bank records and identified a pattern of transactions beginning in December 2013 through April 2015 wherein Tobaccorp deposited over $3.6 million from the Claimants and their affiliates.   [DE 21-2: Affidavit

at ¶ 74-79.]   These payments to Tobaccorp (and also AG-Wood) appear at first glance to be for tobacco, but all or a large portion of the payments are being returned to the Claimants and their affiliates through Farm Credit lines of credit, loans or AgriBank money market accounts.   *Id.*   This activity, taken together with the aforementioned facts, creates a reasonable belief that Claimants were actually hiding production so that insurance claims could be filed for "lost or damaged crops," and thus there was no need to actually purchase large orders of tobacco from a warehouse to fulfill the contracts. Consequently, the bank accounts and lines of credit reviewed during this investigation were being used to promote the tobacco insurance fraud (including paying expenses of the defendant real properties, and commingling laundered funds into a farm operating accounts).   [*Id.* at ¶ 80-88].   And the checks received from sales of tobacco on tobacco contracts that the Claimants designated for the purchase of tobacco from a warehouse were instead applied towards lines of credit and re-deposited into money market accounts in the names of the Claimants and their affiliates.   [*Id.* at ¶ 82-87.]   In fact, the checks seized as defendant property in this matter were made payable to Claimants' daughter, a person who by her own admission was a straw farmer for the Claimants.

And the real property, of course, was the linchpin that allowed this fraud to unfold. Its use in the fraud scheme was vital and intentional.   The Claimants used illegal proceeds both directly and after laundering to pay farm expenses and fund the farm operating accounts at Citizens Bank.   From these bank accounts, the Claimants paid for contract labor on these farms, made utilities and water bill payments for the farms,

bought farm supplies, and made insurance and tax payments on the farms.   [*Id.* at ¶ 110.]

The real property was also involved in money laundering because it facilitated the underlying crime that generated the illegal proceeds laundered.   The Claimants used straw farmers in order to file false insurance claims against crops farmed on his property. They could have used only leased farm land to perpetrate his fraud, but they chose to also use their own land.   The Claimants planted crops which they never intended to produce in order to collect more insurance proceeds.   And, they grew "hidden" production crops and sold those crops through third parties to collect on their tobacco contracts.   (¶ 114-128).   By using their land, the Claimants were able to conceal a large portion of the fraud.   The real property was not used sparsely or sporadically, but rather was used so frequently, and over such a long period of time, that it was indispensable to the scheme. False insurance claims date back to as early as 2010, and have resulted in millions of dollars in fraudulent claims being paid to the Claimants and their affiliates, which were then laundered in order to promote and conceal the fraud scheme.   It would not have been possible without using the farm land.

The "but for" test cited by Claimants in their motion is inapposite to examining the appropriateness of a complaint against the defendant real property at the pleading stage. [DE 26-1: Claimant's Motion at 16.]   In *United States v. Coffman*, 859 F. Supp.2d 871, 875 (E.D. Ky. 2012), this Court held that proceeds of a fraud are defined as property that a person would not have but for the criminal offense.   *See also United States v.*

8

*Warshak*, 631 F.3d 266, 329-330 (6th Cir. 2010) (all proceeds of defendant's business are forfeitable because the business was "permeated with fraud;" but even if a part of the business was legitimate, the proceeds of that part are nevertheless forfeitable if the legitimate side of the business would not exist but for the "fraudulent beginnings" of the entire operation).   But the United States is also seeking the forfeiture of the defendant real property under an "involved in" or facilitation theory of money laundering—not simply a "proceeds" theory.   [DE 21-2: Affidavit at ¶ 109-112.]   And as this Court said in *Coffman*, money laundering forfeiture pursuant to § 982(a)(1) applies to a larger class of property than proceeds forfeiture under § 981(a)(1)(C) because it applies to more than just the laundered property or proceeds from the laundered property.   *Coffman*, 859 F. Supp. 2d at 875.   Moreover, real property that is used to facilitate underlying specified unlawful activities which generates proceeds, which are then laundered in violation of federal money laundering statutes, is subject to forfeiture as property "involved in" a money laundering offense.   *See e.g., United States v. Wyly*, 193 F.3d 289, 302 (5th Cir. 1999).   This includes real property that was paid for (e.g. taxes, mortgages and operating expenses) from operating accounts holding the proceeds of insurance fraud.   *United States v. Schlesinger*, 261 F. App'x 355, 361 (2d Cir. 2008).

This affidavit is not bare-bones.   It provides a thorough narrative of the alleged fraud scheme which satisfies the requirements under Rule G(2).   The pleading requirement of Rule G does not demand "that the government must demonstrate probable cause for forfeiture in its complaint, or in other words, carry its trial burden at the

pleading stage." *United States v. Six Thousand Dollars in U.S. Currency*,     citing

*United States v. Real Prop. Located at 2323 Charms Rd., Milford Twp., Oakland Cty.,*

*Mich.*, 946 F.2d 437, 441 (6th Cir.1991).   Claimants seek to elevate the civil forfeiture

pleading standard beyond what is required by established law, and they cannot square this

position with the plain language of 18 U.S.C. § 983(a)(3)(D), which provides explicitly

that "[n]o complaint may be dismissed on the ground that the Government [does] not

have adequate evidence at the time the complaint was filed to establish the forfeitability

of the property."

Construing the complaint in the light most favorable to the plaintiff, the United

States has met its burden.   *United States v. Real Property Located at 6001 N. Ocean*

*Drive*, Case No. 15–11574, 2015 WL 5209637 (E.D. Mich. Sept. 4, 2015).   It is not

required to allege in the complaint all of the facts and evidence at its disposal.   *United*

*States v. $506,069.09 Seized from First Merit Bank*, 72 F.Supp.3d 818, 824 (N.D. Ohio

2014).   And the Claimants cannot use a motion to dismiss as a tool to peek into an

ongoing criminal investigation.[5]   The United States is not required to set forth all of its

evidence, or even enough evidence to show that it will prevail.   *United States v. Real*

*Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1193 (9th Cir. 2004).

---

5 In fact, the United States plans to file a motion pursuant to 18 U.S.C. § 981(g) to stay the civil forfeiture action pending the outcome of the criminal investigation for this very reason. As Claimants make clear through their insistence that aspects of the criminal investigation be revealed to them (e.g. the source of anonymous complaints, content of interviews with adjusters, etc.), civil discovery in this case will adversely affect the ability of the United States to conduct a related criminal investigation of this matter.

Finally, the Claimants argue that because the complaint alleges forfeiture based on fraud offenses, that the Court should scrutinize the pleadings through a heightened pleading standard found under Federal Rule of Civil Procedure 9(b).    However, this argument has no basis in forfeiture law.    Rule 9(b) has no application to civil forfeiture because there is already a heightened pleading requirement found in Supplemental Rule G.    *United States v. $15,270,885.69 Formerly on Deposit, et al.*, No. 99-Civ-10255(RCC), 2000 WL 1234593 (S.D.N.Y. Aug. 31, 2000).    There is simply no precedent for applying Rule 9(b) to a forfeiture action involving defendant in-rem property.    *See United States v. Any and All Funds on Deposit in Account Number 0139874788, et al.*, No. 13-Civ-7983(KPF), 2015 WL 247391 at *8 (S.D.N.Y. Jan. 20, 2015) ("As long as the Government alleges specific facts supporting an inference that the funds are traceable to the wire fraud and mail fraud it has met its burden at this stage of the proceedings."); *United States v. All Funds on Deposit in, or Transferred to or Through Banc of America, et al.*, No. CV-05-3971(SJF), 2007 WL 2114670 at *7 (E.D.N.Y. July 16, 2007).

A proposed Order is tendered herewith.

Respectfully submitted,

KERRY B. HARVEY
UNITED STATES ATTORNEY


s/ Wade T. Napier
Assistant United States Attorney
207 Grandview Dr., Suite 400

11

Ft. Mitchell, KY 41017-2762
(859) 655-3205
wade.napier@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2016, I electronically filed the foregoing

with the clerk of the court by using the CM/ECF system which sent notice to all

registered users.

s/ Wade T. Napier
Assistant United States Attorney

12