UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. |
| v. ) | 16-CV-43-JMH |
| ) | |
| 12 PARCELS OF REAL PROPERTY ) | |
| LOCATED IN CARLISLE, NICHOLAS ) | **MEMORANDUM OPINION & ORDER** |
| COUNTY, KENTUCKY, et al., ) | |
| ) | |
| Defendants. ) | |

\*\*\*

**I.**

This case commenced when the United States filed a Complaint seeking *in rem* civil forfeiture of approximately 1,300 acres of farmland in Nicholas County owned by Earl and Suzanna Planck and various trusts and entities owned by the Plancks. [DE 1.] Claimants Earl and Suzanna Planck moved to dismiss the first Complaint on the grounds that Plaintiff failed to allege any legitimate basis for forfeiture under 18 U.S.C. § 981(a)(1)(A), which applies to property "involved in" a money laundering offense in violation of 18 U.S.C. §§ 1956 and 1957, when a person conducts or attempts to conduct a financial transaction with the proceeds from specified unlawful activities. [DE 5]. That Motion to Dismiss was dismissed as moot when the United States filed, first, an Amended Complaint seeking the forfeiture of two AgriBank money market accounts containing approximately

$500,000, one in the name of B.S. Land and Cattle Co., Inc., and one in the name of Earl Planck, Jr., and a Second Amended Complaint adding a claim for the forfeiture of twelve checks in the amount of $86,510.62 made payable from Farmers Warehouse to Tonya Fryman, the Planck's daughter. Both amended complaints added a claim for forfeiture under 18 U.S.C. § 981(a)(1)(C) for the forfeiture of property constituting or derived from proceeds traceable to a violation of 18 U.S.C. § 1014 (False Statements or Reports Concerning Crop Insurance), 18 U.S.C. § 287 (False, Fictitious, or Fraudulent Claims), 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 1341 (Mail Fraud), and 18 U.S.C. § 1343 (Wire Fraud), each of which is a specified unlawful activity for 18 U.S.C. §§ 1956 and 1957 (Money Laundering).

Claimants argue in their present Motion to Dismiss the Second Amended Complaint [DE 26] that the Second Amended Complaint [DE 21], as were its predecessors, is void of any factual basis and constitutes mere speculation because, at the end of a two year investigation, the United States "cannot produce a single witness to corroborate its allegation that Earl Planck filed fraudulent crop loss claims or . . . hid undamaged tobacco by giving it to others to sell on his behalf" [DE 26-1 at 5, PageID#: 684], bribed insurance adjustors, or sold tobacco "under the barn." The Court concludes that Claimants confuse

2

the requirement of detailed allegations with the concept of evidentiary proof and denies their Motion.

**II.**

When a claimant files a motion to dismiss a civil forfeiture complaint under Rule G(8)(b) of the Federal Rules of Civil Procedure Admiralty and Maritime Claims Supplemental Rules, the Court must apply the standard set forth in Supplemental Rule G(2)(f).[1] *See* Rule 8(b)(ii). Rule G(2)(f) provides that the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *See also United States v. Sum of $70,990,605*, 4 F. Supp. 3d 189, 196–97 (D.D.C. 2014). "[T]hese standards are more stringent than the general pleading requirements set forth in the Federal Rules of Civil

---

[1] The Court declines to scrutinize the proceedings under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which does not apply to civil forfeiture actions where there is already the heightened pleading requirement found in Supplemental Rule G. *See United States v. $15,270,885.69 Formerly on Deposit, et al.*, No. 99-Civ-10255(RCC), 2000 WL 1234593 (S.D.N.Y. Aug. 31, 2000); *United States v. Any and All Funds on Deposit in Account Number 0139874788, et al.*, No. 13-Civ-7983(KPF), 2015 WL 247391 at *8 (S.D.N.Y. Jan. 20, 2015) ("As long as the Government alleges specific facts supporting an inference that the funds are traceable to the wire fraud and mail fraud it has met its burden at this stage of the proceedings."); *United States v. All Funds on Deposit in, or Transferred to or Through Banc of America, et al.*, No. CV-05-3971(SJF), 2007 WL 2114670 at *7 (E.D.N.Y. July 16, 2007).

3

Procedure." *In re 650 Fifth Ave. & Related Properties*, 777 F. Supp. 2d 529, 542 (S.D.N.Y. 2011) (quoting *United States v. Daccarett,* 6 F.3d 37, 47 (2d Cir. 1993)); *see also* 12 C. Alan Wright, A. Miller, and R. Marcus, Fed. Prac. & Proc. Civ. § 3242 (2d ed.) ("[The Rule] requires a more particularized complaint than is demanded in civil actions generally.... Apparently this requirement for added specifics is thought appropriate because of the drastic nature of those remedies. Thus, it fortifies the procedural-due-process protections against improper use of these remedies.") This standard mirrors the civil forfeiture procedures statute, 18 U.S.C. § 983(a)(3)(D), in that the adequacy of the complaint is measured against the pleading requirements of subdivision (2), not against the quality of the evidence available to the United States when the complaint was filed. *See* Advisory Committee Note to Rule G(8)(b) (2006).

The complaint need not set forth all of the facts known to the United States, nor is it necessary to allege specific transactions, identify all of the witnesses or otherwise preview the United States' case. *See United States v. Funds in the Amount of $45,050.00*, No. 06-C-2948, 2007 WL 2323307, *5 (N.D. Ill. Aug. 9, 2007) (Rule G(2)(f) does not require allegation tying seized currency to a specific drug transaction); *United States v. 5443 Suffield Terrace*, 209 F. Supp. 2d 919, 923 (N.D. Ill. 2002) (forfeiture complaint does not have to detail

4

specific transactions supporting Government's theory of forfeiture); *United States v. Approximately $25,829,681.80 in Funds*, No. 98 Civ. 2682, 1999 WL 1080370, *6 (S.D.N.Y. Nov. 30, 1999) (complaint that alleges underlying fraud scheme and money laundering transaction is sufficiently particular; actual fraudulent statements need not be alleged); *United States v. Contents of Nationwide Life Ins. Annuity . . . in the Name of Warshak*, No. 1:05-CV-00196, 2008 WL 1733130, *3 (S.D. Ohio April 10, 2008) (rejecting claimant's argument that CAFRA heightened the pleading requirement; to the contrary, section 983(a)(3)(D) makes it clear that the complaint need not detail the tracing of the property to the underlying crime).

Rather, a complaint in such an action must provide reasonably detailed facts, connect the defendant property to the offense giving rise to the forfeiture, and provide a good faith reason to believe that the United States, after the completion of the discovery process, will be able to meet its burden of proof. Fed. R. Civ. P. Supp. AMC Rules G(2)(c) & (f); *see United States v. $829,422.42 in U.S. Currency*, No. 3:08CV00914, 2009 WL 1743753 (D. Conn. June 18, 2009) (complaint alleging a money laundering offense was sufficient to satisfy the reasonable belief standard in Rule G(2)(f) and G(8)(b); the complaint does not have to present evidence sufficient to establish the forfeitability of the property); *United States v. $335,260.00 in*

5

*U.S. Currency*, No. 1:09-CV-2929, 2010 WL 1416919, *2 (N.D. Ohio Apr. 6, 2010). The United States does not have to establish probable cause at the time it files its complaint because to survive a motion to dismiss, it need only satisfy the "reasonable belief" standard of Rule G(2)(f). *United States v. $16,757.00 in U.S. Currency*, No. 1:10CV1450, 2010 WL 5662092, *3 (N.D. Ohio Dec. 22, 2010). The pleading requirement of Rule G does not demand "that the government must . . . carry its trial burden at the pleading stage." *United States v. Six Thousand Dollars in U.S. Currency* (citing *United States v. Real Prop. Located at 2323 Charms Rd., Milford Twp., Oakland Cty., Mich.*, 946 F.2d 437, 441 (6th Cir. 1991)).Nonetheless, forefeiture statutes should be strictly construed against the government, and claims must be dismissed if the allegations do not meet "both the letter and the spirit of the law." *United States v. One 1936 Model Ford V-8 DeLuxe Coach, Motor No. 18-3306511*, 307 U.S. 219, 226 (1939); *Manufacturers Acceptance Corp. v. United States*, 193 F.2d 622, 624 (6th Cir. 1951); *Jones v. U.S. Drug Enf't Admin.*, 819 F.Supp. 698, 714 (M.D. Tenn. 1993).

**III.**

Contrary to the Claimants' assertion, the United States has met this burden. In this instance, the United States argues that it has more than met the reasonable belief standard because it has established probable cause as it relates to the defendant

bank accounts and checks, as determined by a United States Magistrate Judge, in order to properly obtain seizure warrants as to the bank accounts and checks with respect to the crimes alleged. The Claimants have not challenged the viability of those search warrants. Probable cause is a higher standard than the reasonable belief required for filing a civil forfeiture complaint. *See United States v. Contents of Accounts*, No. 3:10-CV-228, 2010 WL 2556849, *3 n.8 (W.D. Ky. June 18, 2010) ("a probable cause finding more than meets the reasonable belief standard required to maintain the complaint"). Since the United States has already cleared that higher burden, the motion to dismiss the complaint against the accounts and checks will be denied.

Further, the United States seeks the forfeiture of the defendant real property by means of an "involved in" or facilitation theory of money laundering—not simply a "proceeds" theory. [DE 21-2: Affidavit at ¶ 109-112.] Money laundering forfeiture pursuant to § 982(a)(1) applies to a larger class of property than proceeds forfeiture under § 981(a)(1)(C) because it applies to more than just the laundered property or proceeds from the laundered property. *United States v. Coffman*, 859 F. Supp.2d 871, 875 (E.D. Ky. 2012). Moreover, real property that is used to facilitate underlying specified unlawful activities which generates proceeds, which are then laundered in violation

of federal money laundering statutes, is subject to forfeiture as property "involved in" a money laundering offense. *See e.g., United States v. Wyly*, 193 F.3d 289, 302 (5th Cir 1999). This includes real property that was paid for (e.g. taxes, mortgages and operating expenses) from operating accounts holding the proceeds of insurance fraud. *United States v. Schlesinger*, 261 F. App'x 355, 361 (2d Cir. 2008).

The defendant real property has not been seized and was not subject to the probable cause analysis before the magistrate judge because seizure warrants are not sought against real property—meaning, in this instance, the Court is more concerned with whether the United States has alleged sufficient facts to support a reasonable belief that the real property will be forfeitable at trial. Claimants offer no real argument for why the information set forth in Special Agent Mary Trotman's affidavit is less than sufficient to support a reasonable belief that the United States will be able to establish at the trial that all of the defendant property is forfeitable.

The Second Amended Complaint seeks forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), alleging that the defendant property was either involved in a money laundering violation or traceable or derived from proceeds of specified unlawful activity. [DE 21-2: Affidavit at ¶ 4.] Section 981(a)(1)(C) authorizes the forfeiture of the proceeds of more

than 200 different state and federal crimes. *United States v. All Funds Distributed to Weiss*, 345 F.3d 49, 56 n.8 (2nd Cir. 2003). Section 981(a)(1)(A) permits the forfeiture of all property involved in a money laundering offense—not just the proceeds being laundered. The affidavit – beginning at paragraph 34 – sets forth with specificity how the defendant property is connected to offenses that give rise to forfeiture: 1) that the investigative information was gathered from numerous sources (e.g., validly obtained search warrants, witness interviews, property records, and complaints submitted to RMA between 2009 and 2013); 2) strong indicia of fraudulent behavior stemming from Claimants lengthy history of claiming large losses through insurance claims (¶ 34-35); 3) reporting harvests that are only a fraction of the pounds per acre compared to county averages (¶ 36-39); 4) claiming crops were being grown on land that is heavily wooded and not suitable for crops (¶ 42- 46); 5) evidence of insurance adjusters who were complicit in filing false claims associated with this land (¶ 44); 6) tobacco sales contracts filed with RMA and records from PMI showing that despite low acreage yield Claimants were consistently nearly fulfilling their contractual amounts of tobacco (¶ 47-52); 7) discrepancies between Claimant Suzanna Planck's multi-year contracts to sell tobacco to PMI and the FSA records only showing her insuring tobacco in the early 2000s (¶ 52-53); 8)

9

admissions by the Claimants' daughter and son-in-law and evidence that they were claiming to farm tobacco when they clearly were not (¶ 54-63) (their statements to USDA and receipt of food stamp benefits is a further indication of fraudulent behavior according to Plaintiff) (¶ 58); 9) a detailed pattern of financial transactions involving Jessie Smith that indicate use of his bank account as a pass-through account for Claimants to launder money illegally obtained through the filing of false claims, as well as insurance loss claims filed by Smith on farms on which Claimants and others also filed claims in different years (¶ 64-70); and 10) ARMtech records indicating insurance indemnity payments based upon false information and duplicate photos utilized by Claimants' adjuster and agent (¶ 71-73).

The Second Amended Complaint also alleges sufficient facts to reasonably support the belief that the defendant real property was involved in or facilitated money laundering. It specifies two ways in which the property was involved: 1) it is traceable to illegal proceeds, and 2) the property facilitated the underlying fraud which generated the laundered proceeds. Investigators analyzed voluminous bank records and identified a pattern of transactions beginning in December 2013 through April 2015 wherein Tobaccorp deposited over $3.6 million from the Claimants and their affiliates. [DE 21-2: Affidavit at ¶ 74-79.] These payments to Tobaccorp (and also AG-Wood) appear at first

glance to be for tobacco, but all or a large portion of the payments are being returned to the Claimants and their affiliates through Farm Credit lines of credit, loans or AgriBank money market accounts. *Id.* Understood together, this activity creates a reasonable belief that Claimants were actually hiding production so that insurance claims could be filed for "lost or damaged crops," and thus there was no need to actually purchase large orders of tobacco from a warehouse to fulfill the contracts. Consequently, the bank accounts and lines of credit reviewed during this investigation were being used to promote the alleged tobacco insurance fraud (including paying expenses of the defendant real properties, and commingling laundered funds into a farm operating accounts –rendering it irrelevant that the real property at bar constitutes twelve properties some of which were not farmed). [*Id.* at ¶ 80-88]. It is curious and checks received from sales of tobacco on tobacco contracts that the Claimants designated for the purchase of tobacco from a warehouse were instead applied towards lines of credit and re-deposited into money market accounts in the names of the Claimants and their affiliates. [*Id.* at ¶ 82-87.] In fact, the checks seized as defendant property in this matter were made payable to Claimants' daughter, a person who the United States avers was, by her own admission, a straw farmer for the Claimants. And the real property, of course, was the

linchpin that allowed this alleged fraud to unfold. If the allegations are true, its use in the fraud scheme was vital and intentional. Plaintiff avers that Claimants used illegal proceeds both directly and after laundering to pay farm expenses and fund the farm operating accounts at Citizens Bank. From these bank accounts, the Claimants paid for contract labor on these farms, made utilities and water bill payments for the various real properties, bought farm supplies, and made insurance and tax payments on the real properties. [*Id.* at ¶110.]

The real property was also allegedly involved in money laundering because it facilitated the underlying crime that generated the illegal proceeds laundered. The United States avers that the Claimants used straw farmers in order to file false insurance claims against crops farmed on his property. They could have used only leased farm land to perpetrate his fraud, but they chose to also use their own land. According to the United States, Claimants planted crops which they never intended to produce in order to collect more insurance proceeds, and they grew "hidden" production crops and sold those crops through third parties to collect on their tobacco contracts. (¶ 114-128). The United States avers that, by using their land, the Claimants were able to conceal a large portion of the fraud and that, because the real property was not used sparsely or

sporadically but rather was used so frequently and over such a long period of time that it was indispensable to the scheme. The United States avers that false insurance claims in this scheme date back to as early as 2010 and have resulted in millions of dollars in fraudulent claims being paid to the Claimants and their affiliates, which were then laundered in order to promote and conceal the fraud scheme – none of which would have been possible without "using" the farm land which is the subject of the forefeiture action.

In light of the multiple theories of connection of activity to the defendant real property, the "but for" test cited by Claimants in their motion is not dispositive of the complaint against the defendant real property at the pleading stage in this case. [DE 26-1: Claimant's Motion at 16.] In *Coffman*, 859 F. Supp.2d at 875, this Court held that property that a person would not have but for the criminal offense can be defined as proceeds of a fraud. *See also United States v. Warshak*, 631 F.3d 266, 329-330 (6th Cir. 2010) (all proceeds of defendant's business are forfeitable because the business was "permeated with fraud;" but even if a part of the business was legitimate, the proceeds of that part are nevertheless forfeitable if the legitimate side of the business would not exist but for the "fraudulent beginnings" of the entire operation). There are other theories by which property is forfeitable, as well.

The real question is whether Plaintiffs have averred sufficient facts to support a claim that anyone committed the fraud alleged. Claimants insist that it is not enough to aver that Earl Planck made insurance claims that amounted to a significant amount of money over time considering the number of fields allegedly involved in this matter; nor is it enough to aver that a farmer buys tobacco on the open market to fulfill contracts under which he is obligated to provide a certain amount of tobacco over time in order to retain those contracts in future years; nor is it enough that the Planck's daughter, Tonya Planck Fryman, and her husband, David Leech, receive money to support their farming operations from the Plancks and pay them back from the proceeds from their farming operations. Those are not the only allegations, though, as set forth above.

Ultimately, Claimants argue that claims fails because Plaintiff has not yet provided the proof that it must provide as the case moves forward. Plaintiff does not need to prove its claim today nor does this decision deprive Claimant of his ability to defend himself or his land from purportedly illegal payments for which he is unaware. That is the purpose of this litigation, assuming it proceeds and is not stayed at some point in the future, to permit the parties to ascertain one anothers' positions and the evidence upon which they are based. For now, the Court is persuaded that Plaintiff has averred sufficiently

14

detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. No more definite statement is needed.

With respect to the Claimants request for a hearing, the Court declines to grant it at this time. Rather, Claimants may file a motion to stay under 18 U.S.C. § 981(g)(2) or other proper authority, suitable for response with respect by Plaintiff so that proceedings in this case may be established to bring this matter to a conclusion in due course.

Accordingly, **IT IS ORDERED** that Claimant's Motion to Dismiss the Second Amended Complaint [DE 26] is **DENIED**.

This the 29th day of September, 2017.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge